IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MIANNA RUIZ and ELAINE THIEL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:26-cv-00743 |
| | ) | |
| CITY OF INDIANAPOLIS, INDIANA, and | ) | |
| the DIRECTOR OF INDIANAPOLIS | ) | |
| ANIMAL CARE SERVICES, in her official | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

### Introductory Statement

1.     Mianna Ruiz and Elaine Thiel are both long-term volunteers of the animal shelter operated by Indianapolis Animal Care Services ("IACS").  Over the years, they have each devoted many hundreds if not thousands of hours to the animals in IACS's care.  While the experience for both of them has oftentimes been extremely rewarding, it has also given rise to significant concerns about IACS's direction, its leadership, and whether it could better serve the animals in its care.  Both Ms. Ruiz and Ms. Thiel would like to freely share their opinions about IACS and, to support those opinions and to provide information to the public, would similarly like to disseminate a wide array of information that they receive only through volunteering at IACS. Unfortunately, in November 2025, IACS distributed to its volunteers a new "Volunteer Handbook" that prohibits them from doing so.  As is relevant to this case,

1

this Volunteer Handbook (a) prohibits any "[d]isrespectful behavior while on, or off, duty for IACS . . . includ[ing] disrespectful behavior on social media or other online platforms" and (b) prohibits the dissemination of any "information that is not readily available to the public" including, *inter alia*, "email communications."  Both of these provisions violate the First Amendment to the United States Constitution.

2.     Notably, this is not the first time that Ms. Ruiz and Ms. Thiel have been forced to file suit after IACS adopted policies that were overly restrictive of its volunteers' First Amendment rights.  Rather, after officials explicitly threatened both Ms. Ruiz and Ms. Thiel with termination if they spoke critically of IACS, in 2023 they initiated an action to challenge several provisions of IACS's then-extant volunteer and social media policies.  This action was dismissed without prejudice after IACS amended the challenged provisions, although it delayed notifying volunteers of the changes for the better part of a year even after this previous lawsuit was dismissed.

3.     IACS's attempts to restrict what its volunteers may say on issues of profound public concern have returned.  The aforementioned provisions of IACS's current Volunteer Handbook must be enjoined.  Ms. Ruiz and Ms. Thiel are also entitled to their damages.

**Jurisdiction, Venue, and Cause of Action**

4.     This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1331 and 1343.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

6.     Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and by 28 U.S.C. §§ 2201 and 2202.

7.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States.

**Parties**

8.     Mianna Ruiz is an adult resident of Marion County, Indiana

9.     Elaine Thiel is an adult resident of Marion County, Indiana

10.    The City of Indianapolis, Indiana is a municipality located in central Indiana.

11.    The Director of Indianapolis Animal Care Services is the official in charge of that agency of the City of Indianapolis.  She is sued in her official capacity.

**Factual Allegations**

12.    Indianapolis Animal Care Services ("IACS") is an agency of the City of Indianapolis ("the City") that is responsible for operating the City's animal shelter and for enforcing within the City statutes and ordinances relating to the care, treatment, and control of animals.

13.    The Director of IACS serves as the head of that agency.

14.    To operate the City's animal shelter, IACS relies on the time, energy, and commitment of hundreds of volunteers.  Without compensation, these volunteers care for animals in the shelter (many of whom have significant medical or behavioral needs), clean the shelter's kennels, provide companionship to the animals, walk the animals, administer medication to the animals, ensure that the animals are receiving and eating their food, and perform a host of other responsibilities necessary to the operation of the shelter.

15.    Mianna Ruiz and Elaine Thiel are both passionate about animal welfare and, in order to assist animals in need, volunteer at the shelter operated by IACS.  Ms. Ruiz has been volunteering at the shelter since May 2022, and Ms. Thiel has been volunteering at the shelter since July 2021.  At present, Ms. Ruiz volunteers approximately two hours each week at the shelter, and Ms. Thiel volunteers approximately six hours each week.  Both individuals have volunteered with greater frequency in the past.  Over the past several years, Ms. Ruiz and Ms. Thiel have thus each dedicated many hundreds if not thousands of hours of their own time to serving the animals in the shelter.

16.    Ms. Ruiz and Ms. Thiel find volunteering at the shelter to be extremely rewarding but also heartbreaking.  They are constantly forced to observe animals that they care for living in substandard conditions injurious to the animals' physical and mental health and, all too often, animals they have bonded with are euthanized. Despite the strong emotions that these experiences engender, however, they intend to continue volunteering into the indefinite future, for they feel that they are offering vital assistance to animals in need.

17.    Ms. Ruiz and Ms. Thiel recognize that many of the challenges that have been faced by IACS over the past several years and that IACS continues to confront—such as staffing shortages, an aging facility, and increased numbers of animals surrendered to the shelter—are largely beyond its control.  However, they also believe strongly that many of the issues plaguing the shelter have been caused or exacerbated by mismanagement or by an apparent lack of urgency from IACS's leadership.

4

18.     In the past, Ms. Ruiz and Ms. Thiel—along with ninety-five other past or present employees and volunteers of IACS—signed a letter concerning the crisis at IACS that was widely distributed to governmental officials and to the media.  After Ms. Ruiz and Ms. Thiel spoke publicly about their concerns, they were informed by IACS's leadership at the time that their comments (which clearly pertained to a matter of public interest) ran afoul of multiple IACS policies regulating the off-duty speech of its volunteers.  They were further informed that future similar comments would lead to their termination from the volunteer program at IACS.

19.     This led Ms. Ruiz and Ms. Thiel to initiate litigation in this Court under cause number 1:23-cv-01959-JMS-MJD (S.D. Ind.), alleging generally that IACS's policies regulating the speech of its volunteers violated the First Amendment to the United States Constitution.  In February 2024, this litigation was voluntarily dismissed without prejudice after IACS amended the challenged policies.

20.     Despite its formal amendment of the policies that were challenged in this previous litigation, IACS did not inform its volunteers that these policies had been altered until October 2024, more than eight months after Ms. Ruiz and Ms. Thiel relied on these changes in deciding to dismiss their lawsuit.

21.     Throughout 2024 and early 2025, Ms. Ruiz, Ms. Thiel, and other volunteers and employees of IACS continued to harbor significant concerns about the leadership and direction of IACS.  These concerns reached a head in February 2025, when dozens of volunteers and employees appeared at a public meeting of the Indianapolis City-County Council to oppose Mayor Hogsett's nomination of IACS's then-interim

director to assume the permanent position.

22.    Many volunteers and employees, including Ms. Ruiz and Ms. Thiel, believed that the welfare of the animals in the care of IACS had been deleteriously affected as a result of several policies implemented in 2024 by the interim director. For instance, persons were prohibited from volunteering at the shelter operated by IACS after 7:00pm—where they had previously been allowed to volunteer until 9:00pm or 9:30pm—meaning that the animals in the care of IACS received significantly less human interaction and therefore became increasingly stressed. Additionally, persons responsible for vetting potential adopters were prohibited from searching MyCase (the electronic case management system for Indiana's courts) to determine if these would-be adopters had a documented history of animal abuse. And, more fundamentally, Ms. Ruiz and Ms. Thiel believe strongly that IACS's leadership at the time did not respect its volunteers or adequately appreciate the time and effort that they devoted to the animals in IACS's care.

23.    The opposition to the nomination of IACS's then-interim director to assume the permanent position caused Mayor Hogsett to withdraw that nomination, and IACS's current director was appointed to the role in July 2025.

24.    Since IACS's current director assumed this role, Ms. Ruiz and Ms. Thiel attempted to afford her the benefit of the doubt. After nearly a year, however, they continue to have significant concerns about the direction of IACS and about whether IACS's policies best serve the animals in its care. By way of example only, despite significant opposition by numerous volunteers, IACS continues to prohibit persons

from volunteering at the shelter after 7:00pm—a policy that has directly affected the number of hours that Ms. Ruiz is able to devote each week to the animals in IACS's care and that negatively impacts the health and welfare of the animals in the shelter.

25.    Ms. Ruiz and Ms. Thiel also have significant concerns about the qualifications of other supervisory employees with IACS, and believe strongly that the hundreds of volunteers who donate their time to IACS and the animals in its care are frequently mistreated and are certainly underappreciated.

26.    They would like to freely share their opinions about IACS, their opinions about its policies and staff, their day-to-day experiences as volunteers for IACS, and the information on which their opinions are based.  Unfortunately, they are again prohibited from doing so.

27.    In November of 2025, IACS distributed to its volunteers an "IACS Volunteer Handbook," and informed its volunteers that they were required to sign an online form acknowledging that they had reviewed the Volunteer Handbook and would abide by its terms.  A true and correct copy of the Volunteer Handbook is attached and incorporated herein as Exhibit 1.

28.    As is relevant here, the Volunteer Handbook imposes two restrictions on volunteers' expressive activities.

29.    First, page 11 of the Volunteer Handbook (using the internal page numbers of the document) provides as follows: "Disrespectful behavior while on, or off, duty for IACS . . . will not be tolerated.  Such behavior will result in disciplinary action or termination from the volunteer program.  This is to include disrespectful behavior on

social media or other online platforms." This restriction is referenced as the "Respect Mandate."

30. And second, page 12 of the Volunteer Handbook (again, using the internal page numbers of the document) provides as follows: "Volunteers will come into contact with information that is not readily available to the public. They should not share info publicly (investigation cases, email communications, staff/volunteer page screenshots, addresses)." This restriction is referenced as "Public-Sharing Prohibition."

31. Ms. Ruiz and Ms. Thiel do not know precisely what "behavior" IACS believes to be "disrespectful" within the meaning of the Respect Mandate. However, given the policy's reference to behavior "on social media or other online platforms," they understand that the policy prohibits some expressive activity.

32. Both Ms. Ruiz and Ms. Thiel maintain active social media presences and have, in the past, utilized their social media accounts to post criticisms of IACS, its supervisory staff, and its treatment of volunteers. While they always attempt to support their opinions with evidence or with descriptions of their own experiences, many of their opinions are directly critical of IACS's staff and sharing these opinions would, in their estimation, be "disrespectful."

33. For example, they have in the past directly criticized the qualifications, competence, motives, and priorities of IACS's leadership, and they wish to again be able to do so. While their concerns are of significant public import, there is no way to share these concerns in a "respectful" manner and, even if there were, Ms. Ruiz and

Ms. Thiel do not wish to self-censor in order to share their concerns.

34.     Because of the Respect Mandate, Ms. Ruiz and Ms. Thiel have not publicly shared their opinions, or have not elaborated on their opinions, although they would very much like to do so.

35.     On top of this, in the course of volunteering for IACS, Ms. Ruiz and Ms. Thiel receive access to a wide array of information and statements that are "not readily available to the public." This information is frequently disseminated to volunteers by electronic mail although some information is also shared through in-person interactions and other information is simply observed or otherwise gleaned during the course of volunteering at IACS's shelter.

36.     Ms. Ruiz and Ms. Thiel certainly understand that the dissemination of a small subset of the information they receive that is "not readily available to the public"— such as information pertaining to open investigations, the contact information of adopters and other persons, or images of animals being euthanized—might appropriately be restricted, and they have no desire to publicize this information. However, they also receive a wide array of communications and other information governed by the Public-Sharing Prohibition that does not raise similar concerns and that is of public interest and import.

37.     For example, with great regularity they receive e-mail communications from supervisory staff at IACS that provide information, for instance, about new policies or procedures, about the basis for any changes, or about a wide array of other matters. None of these communications are "readily available to the public."

38.    Ms. Ruiz and Ms. Thiel would like to be able to disseminate these communications freely.  Being able to do so would allow them to support their opinions about IACS and its leadership, and about the manner in which volunteers are treated at IACS, and would also allow them to share information that they believe to be of profound public concern.  However, they are prohibited by the Public-Sharing Prohibition from doing this.

39.    Due exclusively to the Respect Mandate and the Public-Sharing Prohibition, Ms. Ruiz and Ms. Thiel have declined to publicize their opinions or otherwise disseminate information about IACS and its operations.  The issues on which Ms. Thiel and Ms. Ruiz wish to speak are, quite clearly, matters of public concern.

40.    IACS has no interest at all in suppressing this speech.  Even if IACS did have such an interest, however, this interest is greatly outweighed by the interests of Ms. Ruiz and Ms. Thiel as well as by the interests of both potential audiences and other current and future IACS volunteers subject to the Respect Mandate and the Public-Sharing Prohibition.

41.    In November 2025, after the Volunteer Handbook was disseminated to volunteers at IACS, Ms. Ruiz and Ms. Thiel (by counsel) contacted an attorney for the City of Indianapolis to raise their concerns about the constitutionality of the Respect Mandate and the Public-Sharing Prohibition.  They were informed that IACS is not willing to alter these provisions.

42.    As a result of IACS's enforcement of the challenged provisions of its Volunteer Handbook, Ms. Ruiz and Ms. Thiel are suffering irreparable harm for which there is

no adequate remedy at law.

43.    As a result of IACS's enforcement of the challenged provisions of its Volunteer Handbook, Ms. Ruiz and Ms. Thiel have suffered damages.

44.    The Volunteer Handbook and its terms represent policies or practices attributable to the defendants and for which the defendants are liable.

45.    At all times, the defendants have acted or refused to act under color of state law.

**Legal Claim**

46.    The Respect Mandate and the Public-Sharing Prohibition, contained with IACS's Volunteer Handbook, both violate the First Amendment to the United States Constitution.

**Request for Relief**

WHEREFORE, the plaintiffs request that this Court do the following:

1. Accept jurisdiction of this cause and set it for hearing.

2. Declare that the defendants have violated the rights of the plaintiffs for the reason described above.

3. Award the plaintiffs their damages, including both nominal and compensatory damages.

4. Issue a permanent injunction prohibiting the enforcement of the Respect Mandate and the Public-Sharing Prohibition contained within IACS's Volunteer Handbook.

5. Award the plaintiffs their costs and attorneys' fees pursuant to 42 U.S.C. §

1988.

6.  Award all other proper relief.

> Gavin M. Rose
> ACLU of Indiana
> 1031 E. Washington St.
> Indianapolis, IN  46202
> 317/635-4059, x106
> Fax:   317/635-4105
> grose@aclu-in.org
>
> *Attorney for the plaintiffs*